UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| *C.G. and B.S., as parents and* | ) | |
| *next friends of A.S., a minor,* | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | *Civil No. 05-237-P-S* |
| | ) | |
| *FIVE TOWN COMMUNITY* | ) | |
| *SCHOOL DISTRICT, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

*MEMORANDUM DECISION ON MOTION*
*TO SUPPLEMENT RECORD*

C.G. and B.S., as parents and next friends of A.S., a minor ("Parents"), move pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*., to supplement the administrative record in the instant appeal of a decision of a Maine Department of Education ("MDOE") hearing officer. *See* Plaintiffs' Amended Motion To Permit Presentation of Additional Evidence, etc. ("Motion") (Docket No. 18) at 1-3. For the reasons that follow, the motion is granted in part and denied in part.

**I. Applicable Legal Standard**

The IDEA directs that a court reviewing state educational proceedings "receive the records of the administrative proceedings" and "hear additional evidence at the request of a party[.]" 20 U.S.C. § 1415(i)(2)(B)(i) & (ii). Nonetheless, as the First Circuit has clarified, a party has no absolute right to adduce additional evidence upon request:

> . . . As a means of assuring that the administrative process is accorded its due weight and that judicial review does not become a trial *de novo*, thereby rendering the administrative hearing nugatory, a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so. To determine whether this burden has been satisfied, judicial inquiry begins with the administrative record. A district court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

*Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 996 (1st Cir. 1990) (citation and internal punctuation omitted).

## II. Analysis

### A. Backdrop

On June 29, 2005 the Parents filed a request for a due-process hearing with the MDOE. *See* Administrative Record ("Record"), § I at 1. By letter dated July 12, 2005 the MDOE appointed Shari Broder ("Hearing Officer") to preside as hearing officer in the case. *See id.* at 10.[1] She presided at a four-day administrative hearing held on October 26, October 31, November 2 and November 9, 2005. *See id.*, § III at 629 & § IV at 699, 778, 855. On or about October 28, 2005, the Parents' counsel happened to learn, in their capacity as counsel in an unrelated Cape Elizabeth matter, that the MDOE had appointed the Hearing Officer to serve as complaint investigator in the Cape Elizabeth case. *See* Motion at 8; Declaration of Amy Sneirson ("Sneirson Decl.") (Docket No. 20) ¶¶ 11-12; Maine Department of Education's Opposition to Plaintiffs' Motion To Permit Presentation of Additional Evidence ("MDOE's Opposition") (Docket No. 24) at 3.

On or about December 6, 2005, following submission of lengthy post-hearing memoranda by both the Parents and the Five Town Community School District ("School District"), *see* Record, § III

---

[1] Section I of the Record contains two pages numbered 10. My reference is to the second page 10.

at 497-588, the Hearing Officer issued a decision adverse to the Parents, *see id.* at 590-626.[2] She synopsized the Parents' position, noting that they had argued that (i) the School District violated its child-find obligations by failing to refer, evaluate and identify A.S. in a timely manner, (ii) as a result, the Parents had to make an emergency placement of A.S. at Moonridge Academy ("Moonridge") in Utah in March 2004, the costs of which they argued the School District should be ordered to reimburse them, and (iii) the School District's later offered individualized education plan ("IEP") also was inadequate, as a result of which the School District should be ordered to bear the costs of placement in an appropriate school. *See id.* at 610-11. She went on to conclude that the School District did not violate its child-find obligations, did not err in refusing to find A.S. eligible for special education in March 2004, and did not fail to provide A.S. with a timely offer of a free appropriate public education ("FAPE"), as a result of which the family was not entitled to reimbursement of Moonridge costs. *See id.* at 626. She also found that the family was not entitled to an order for a therapeutic placement of A.S. *See id.* In so concluding she noted, among other things, that she found the School District's account of facts surrounding the Parents' initial request for a referral credible. *See id.* at 613. She also observed that she found credible the testimony of Frank McCabe, Ed.D., a licensed psychological examiner and certified school psychological services provider who, at the School District's request, had reviewed evaluations of A.S. and interviewed the Parents and teachers and who had opined that A.S. did not require a therapeutic residential placement. *See id.* at 607, 621.

On December 22, 2005 the Parents filed the instant complaint, naming the MDOE and the School District as defendants and asserting, *inter alia*: "The hearing officer's simultaneous service as a complaint investigator of the state educational agency was a violation of the IDEA's due process procedures that guarantee parents of children with disabilities the ability to present their case to an

---

[2] On or about December 16, 2005 the Hearing Officer amended the final page of her decision. *See* Record, § III at 625-26.

impartial hearing officer." Docket; Complaint (Injunctive Relief Requested) ("Complaint") (Docket No. 1) at 1 & ¶ 44. Subsequent to filing the instant suit, the Parents served the MDOE with a request for documents pursuant to Maine's Freedom of Access law. *See* Sneirson Decl. ¶ 15. The Parents' counsel reviewed documents responsive to that request on January 24, 2006. *See id.* ¶ 16.

### B. Analysis

The Parents seek to supplement the Record with four categories of evidence:

1. Documents obtained from the MDOE concerning its practices and policies and its relationship with the Hearing Officer, to "assist the Court in determining whether the administrative due process hearing afforded to AS was procedurally and substantively fair and impartial under the IDEA." Motion at 2.

2. Limited direct and cross-examination of the principal witnesses in the case, "to the extent that the Court deems it necessary to hear testimony of the principal witnesses in open court to make its own determinations of credibility, due to its inability to rely upon the hearing officer's findings[.]" *Id.*

3. Minutes of a Pupil Evaluation Team ("PET") meeting that took place October 20, 2005, which the Parents assert were not provided to them until well after the conclusion of the administrative hearing. *See id.*

4. Testimony and exhibits presented under oath by A.S.'s father, B.S., updating the court as to A.S.'s condition and status since November 2005, which the Parents contend bears both on the appropriateness of her unilateral placement and the inappropriateness of the School District's proposed IEP given the level of A.S.'s mental illness. *See id.* at 3.

For the reasons that follow, I conclude that the Parents' motion to supplement the Record should be granted in part and denied in part.

### 1.  Evidence Concerning Hearing Officer's Asserted Partiality

I deny the Parents' bid to admit the first two categories of evidence for the same reasons I denied an identical request in *Mr. V. v. York Sch. Dist.*, No. CIV. 05-228-P-S, 2006 WL 1387517, at *3-*8 (D. Me. May 17, 2006) (*aff'd* June 21, 2006).  The circumstances in all material respects are the same: In this case, as in *Mr. V.*, the Parents' counsel (who are also counsel for Mr. and Mrs. V.) happened to learn on October 28, 2005 that the Hearing Officer had been assigned to serve as a complaint investigator in the unrelated Cape Elizabeth matter; the Parents did not then voice objection to that appointment; the proceedings below (which were less far along than in *Mr. V.*) continued to their conclusion, with the Hearing Officer ruling against the Parents on the merits; the Parents then raised the issue of Hearing Officer partiality/lack of independence as part of their suit in this court; and the Parents offer no evidence of actual bias on the part of the Hearing Officer.  Finally, in this case, as in *Mr. V.*, the Parents waited to raise this claim at least in part to see how the Hearing Officer would rule on the merits.  *See* Plaintiffs' Reply Memorandum in Support of Their Amended Motion To Permit Presentation of Additional Evidence ("Reply") (Docket No. 29) at [5].[3]  As in *Mr. V.*, I decline to admit the requested two categories of evidence on the bases that the Parents' challenge to the Hearing Officer is untimely, and, even assuming *arguendo* that it had been timely, they (i) failed to exhaust administrative remedies and (ii) do not, on the Record as they propose it be supplemented, meet the standard necessary to set aside the Hearing Officer's decision.  *See Mr. V.*, 2006 WL 1387517, at *3-*8.

### 2.  PET Meeting Minutes

The Parents next seek to supplement the Record to add the School District's minutes of an October 20, 2005 PET meeting, a copy of which they say they did not receive until well after the

---

[3] The pages of the Parents' reply memorandum are misnumbered.

hearing in this matter closed. *See* Motion at 12; Declaration of B.S. ("B.S. Decl.") (Docket No. 19) ¶¶ 4-7; Exh. A thereto. B.S. asserts that when the Parents finally did receive a copy of those minutes, they were struck by the document's many inaccuracies and omissions. *See* B.S. Decl. ¶ 7. He states that, had the minutes been available, he would have objected to them for reasons set forth in his and C.G.'s testimony concerning that PET meeting. *See id*. The School District rejoins, *inter alia*, that the purportedly inaccurate minutes of a meeting about which both its witnesses and the Parents testified add nothing that would help the court. *See* Defendant Five Town's Opposition to Plaintiffs' Motion to Permit Presentation of Additional Evidence, etc. ("School District's Opposition") (Docket No. 26) at 11-12. I agree.

Both the Parents and a school witness testified about what transpired at the October 20, 2005 PET meeting. *See* Record, § IV at 747-48 (C.G. testimony), 797-99 (B.S. testimony), 813 (testimony of school witness Cynthia Foreman). The Parents, in essence, propose to supplement the Record with the minutes but then "correct" them with testimony similar to that already given at hearing. No useful purpose would be served in permitting that exercise. *See Town of Burlington v. Department of Educ*., 736 F.2d 773, 790 (1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985) (holding that IDEA's additional-evidence clause "does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony"). The request to supplement the Record by adding the School District's minutes of the October 20, 2005 PET meeting, as corrected by the testimony of B.S., accordingly is denied.

### 3. Evidence Updating Student's Status

The Parents finally seek to supplement the Record with a fourth category of evidence, documenting A.S.'s status and programming since her hearing closed on November 9, 2005. *See* Plaintiffs' Motion at 13. The Parents proffer this evidence on two bases: for purposes of gauging the appropriateness of (i) A.S.'s unilateral placement at a certain private school (the F.L. Chamberlain

School ("Chamberlain School") in Middleboro, Massachusetts) and (ii) the School District's proposed 2005-06 IEP in view of the level of A.S.'s mental illness. *See id.* at 3, 13, 16; *see also* Reply at [6]-[7].

As this court observed in *Mr. I v. Maine Sch. Admin. Dist.* 55, 416 F. Supp.2d 147 (D. Me. 2006), a showing that a private school placement is appropriate entails demonstrating that the school provides some element of special-education services in which the public school placement was deficient. *Mr. I*, 416 F. Supp.2d at 172. The fact that a child continues to thrive and make social and educational progress in a private setting is irrelevant to that question. *See id.* at 172 & n.18. In this case, the proffered evidence touches not only on whether A.S. thrived at the Chamberlain School but also on the special-education services it offered in which the School District arguably was deficient. The School District points out that the Parents did adduce evidence at hearing concerning the Chamberlain School; *see* School District's Opposition at 14 n.12; Record, § II at 449-63, § III at 464-84 & § IV at 797; however, as of the time the hearing concluded the Parents had not yet applied to send A.S. to the school and, thus, were able to offer in evidence only school brochures and testimony concerning the way in which the school had impressed them on a visit, *see* B.S. Decl. ¶ 9; Record, § IV at 797. A.S. began attending the Chamberlain School on February 13, 2006. *See* B.S. Decl. ¶¶ 15-16. The evidence the Parents now propose to adduce sheds light on the manner in which specialized services actually have been provided to her, including the IEP developed for her at the Chamberlain School. *See* Exh. C to *id*. Thus, the proffered evidence would be relevant, non-cumulative and helpful were the court to reach the question whether A.S.'s placement at the Chamberlain School was appropriate.

To the extent the Parents also seek to adduce proposed evidence to shed light on the appropriateness of the IEP offered by the School District for A.S. in light of the severity of her mental

illness, supplementation is appropriate on that basis as well. *See, e.g., Mr. I. v. Maine Sch. Admin. Dist. No. 55*, No. Civ. 04-165-P-H, 2004 WL 2397402, at *3 (D. Me. Oct. 27, 2004) ("[I]n the context of review of decisions concerning both the adequacy of IEPs and eligibility for special services, courts have erred on the side of admitting evidence reflecting a child's post-hearing status on the theory that the proffered information might shed light on the reasonableness of (and thus be relevant to) the earlier decision.").

Thus, I will allow this proposed category of supplementation for both purposes for which it is offered. This supplementation consists of the proffered testimony of B.S. (except for that touching on the PET minutes) and Exhibits B through D (but not Exhibit A) to his declaration. *See* B.S. Decl. & exhibits thereto. The School District requests permission to depose C.G. and B.S. regarding the permitted supplemental information, consistent with the process approved by the court in *Mr. I*. *See* School District's Opposition at 14 n.13. That request is reasonable. Accordingly, it is ordered that the testimony of both B.S. and C.G. (who shall be subject to cross-examination) on the permitted subject matter shall be taken at depositions to be scheduled by the parties at a mutually agreed time(s) and place(s), subject to the constraint that transcripts of both depositions shall be filed with the court by August 4, 2006.[4]

### III. Conclusion

For the foregoing reasons, the Parents' motion to supplement the administrative record is **GRANTED** with respect to (i) the proffered testimony of B.S. (except for that touching on the PET minutes) and (ii) Exhibits B through D to his declaration, and otherwise **DENIED**. The parties shall

---

[4] The Parents also offer to present detailed testimony from A.S.'s current therapist, Jennifer Strazdes, and Chamberlain school teacher, Dan VanDerlip, should the court deem the proffered testimony of B.S. insufficient on the issue of A.S.'s program at Chamberlain, her current status and her progress there to date. *See* Motion at 16. Inasmuch as the Parents are satisfied to rely on the testimony of B.S., and the School District is satisfied to obtain deposition testimony of B.S. and C.G., on these subject matters, *see* School District's Opposition at 14 n.13, and neither side explains the benefit of further expansion of the Record to include deposition testimony of
(*continued on next page*)

8

schedule depositions of both B.S. and C.G. with respect to the permitted subject matter, during which both witnesses shall be subject to cross-examination, at a time(s) and place(s) to be mutually agreed upon, subject to the proviso that transcripts of said depositions shall be filed with the court on or before August 4, 2006.

Briefing shall thereafter follow in accordance with the terms of the operative scheduling order (*e.g.*, the Parents' brief shall be filed within 45 days of the filing of the foregoing deposition transcripts with the court; the School District shall then submit its brief within 30 days of submission of the Parents' brief; and the Parents shall submit any reply brief within 14 days of submission of the School District's brief). *See* Alternative Scheduling Order (Docket No. 11).

So ordered.

Dated this 27th day of June, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

Strazdes and VanDerlip, I decline to order that their testimony be taken.